Miriam Imbrey, Respondent, v. The Prudential Insurance Company of America, Appellant.

First Department, June 29, 1939.

*Benjamin Paul Goldman* of counsel [*Solon Weit*, attorney], for the appellant.

*Martin M. Kolbrener* of counsel [*Sydney Cutler* and *Julius Cutler* with him on the brief; *Cutler & Cutler*, attorneys], for the respondent.

Dore, J. Plaintiff, the widow of Fred E. Imbrey, insured under a policy of life insurance issued by defendant in 1929, brought this action to recover $10,000, the face amount of the policy. The defense was that the quarterly premium due November 22, 1936, had not been paid when due nor within the grace period; that pursuant to section 92 of the Insurance Law a premium notice had been mailed to the deceased's last known post office address, 143-23 Rose avenue, Flushing, N. Y.; that the policy had lapsed for non-payment of premiums and all benefits under the policy had expired subsequent to the expiration of the grace period on December 23, 1936; and that no insurance was in force on June 9, 1937, the date of the insured's death.

The court submitted to the jury two specific questions of fact on which the jury was to render special verdicts. The questions and the special verdicts rendered were as follows: " 1. Q. Did the defendant mail a premium notice on or about October 30, 1936, addressed to the assured at 143-23 Rose Avenue, Flushing, New York? " The jury answered this question in the affirmative unanimously. " 2. Q. Was 143-23 Rose Avenue, Flushing, New York, the last known post office address in this State of the assured? " The jury answered this question in the negative by a vote of ten to two.

Before the case went to the jury, defendant had moved for a directed verdict of affirmative answers to both questions; the court reserved decision. Following rendition of the special verdicts, the court denied defendant's motion to set aside the special verdict as to question No. 2, directed the jury to render a general verdict in plaintiff's favor, and denied defendant's motions to direct a verdict in defendant's favor and to set aside the general verdict directed.

Appellant contends that the negative answer to question No. 2 is unsupported by the evidence, that the evidence is clear, convincing and uncontradicted that the Flushing address was the last known post office address of the insured, and that the trial court should have directed an affirmative answer to this question and a general verdict in defendant's favor.

After the direction of the general verdict, plaintiff consented to withdraw all other questions pertaining to the validity of certain loans alleged to have been made after the expiration of the grace period although considerable testimony in the trial had been adduced in connection with such issues. In view of the stipulation these issues are not before us. Plaintiff has not appealed from the jury's

determination that defendant did mail the premium notice on October 30, 1936.

Section 92 of the Insurance Law of 1909, so far as relevant, provides that no insurance company shall within one year after default in payment of any premium declare any policy forfeited or lapsed by reason of non-payment when due of any premium unless a written or printed notice stating the amount of the premium due, the place where it shall be paid, and the person to whom it is payable, shall have been mailed to the insured " at his last known post office address in this State " at least fifteen and not more than forty-five days prior to the day when the same was payable. The statute further provides the notice shall state that unless the premium is paid on the due date the policy shall be forfeited except for surrender value and paid-up policy insurance. The section also provides a thirty-day grace period and that the affidavit of an officer or agent authorized to mail the notice that the required notice has been duly addressed and mailed " shall be presumptive evidence that such notice has been duly given."

It was conceded at the trial that all premiums to and including August 22, 1936, had been paid and the issue on appeal is whether the premium notice for the premium due November 22, 1936, had been mailed to the insured's last known post office address pursuant to the provisions of section 92.

In his original application the insured had designated as his post office address his then business address at 1385 Broadway. There had been intervening address changes. Thus prior to June 17, 1936, the address had been 1400 Broadway, but on that date it was changed to 1400 Broadway, care of Ashley Frocks.

Louis Kaye, employed by defendant for twenty-five years, was in the year 1936 assistant manager of the conservation department in one of the company's large district offices. His duty was to handle the conservation of policies of insurance issued out of that office in which the premium had not been paid on the premium due date. He testified to transactions, conversations and communications had with the insured in connection with the August and November, 1936, premium notices. On September 23, 1936, the insured came to see Kaye at the district office and made an application for a loan in connection with the August, 1936, premium. Kaye testified that on or about September 30, 1936, he had a telephone conversation with Mr. Imbrey and he asked him to send in thirty-two dollars cash balance for the August 22, 1936, premium and Mr. Imbrey said he was sending in a thirty-two-dollar check, that he was going on a business trip, and asked Kaye to instruct the

office to send the August premium receipt to 143-23 Rose avenue, Flushing, N. Y., and unless otherwise notified to use this as his mailing address. Kaye asked him to confirm the change in writing. The next morning defendant received through the mail at its district office a check for thirty-two dollars and the insured's August premium notice on the face of which the address under Mr. Imbrey's name " c /o Ashley Frocks, 1400 Broadway, New York, N. Y.," was crossed out and under it there was written in what was demonstrated on the trial to be Mr. Imbrey's own handwriting " 143-23 Rose Ave., Flushing, N. Y." This premium notice had been mailed to the insured at the Ashley Frocks address which at the time of mailing was the last known address. On the basis of the instructions conveyed by Mr. Imbrey to Kaye and the confirmation of such instructions received in Mr. Imbrey's own handwriting, the company's records were accordingly changed and the November 22, 1936, premium notice was sent to Mr. Imbrey at the Flushing address. The jury properly found that the notice was actually mailed to that address.

When the loan application applicable to the August premium had been approved and the premium paid, Kaye sent to Mr. Imbrey at the Flushing address the receipt for the August 22, 1936, premium. This premium receipt was produced by plaintiff on the trial.

Kaye made numerous further efforts to conserve the policy and had further correspondence with Mr. Imbrey, writing him on October 30, 1936, and November 16, 1936, at the Flushing address. On December 21, 1936, on or about the end of the grace period for the November twenty-second premium, Imbrey wrote defendant, attention of Mr. Kaye, to advise " if I can borrow any money on my insurance policy. Advise me how much I need to pay premium due Nov. 22, 1936." This was written on the letterhead of the Hotel Riverside Plaza, 253 West Seventy-third street, New York city. Kaye replied to that address and sent Imbrey a premium loan application to be completed by him and returned with thirty-seven dollars, eighty-seven cents. Imbrey made no reply, no loan application was returned and nothing further was done toward the payment of the November, 1936, premium. Nevertheless in further efforts to conserve the policy Kaye again wrote Imbrey on December 28, 1936, informing him the policy had lapsed and hoping he would apply for reinstatement; he again wrote on January 22, 1937, and on February 11, 1937, urging him to revive the policy. The last letter was produced by plaintiff on the trial. No answer was received.

Under date of April 5, 1937, Kaye again wrote Imbrey by registered mail and the letter was duly received for the return receipt

bears Imbrey's signature. That was the last of the correspondence. Imbrey died on June 9, 1937.

In addition to the foregoing, defendant proved that on August 11, 1936, Imbrey bought a Chevrolet automobile under a conditional sales contract dated that day and in that contract signed by him his address is given as 143-23 Rose avenue, Flushing, N. Y. The contract was produced by the Biener Auto Service Corporation. A duplicate original was on file in the register of Queens county bearing Mr. Imbrey's signature and the same Flushing address. A credit memorandum in the Biener Auto Service Corporation file was also produced containing the same address stating that Imbrey had been living there for three months. The automobile purchase was financed through General Motors Acceptance Corporation and the records of that corporation showed a form card made out August 17, 1936, showing the original typed address to be 143-23 Rose avenue, Queens, Flushing, N. Y., which was crossed out and changed in long hand to 246 West End avenue. Plaintiff's witnesses admitted having received mail from the General Motors Acceptance Corporation addressed to Mr. Imbrey at the Flushing address. From the Bureau of Motor Vehicles there was produced the original motor vehicle license application signed by Mr. Imbrey in August, 1936, also giving the same Flushing address as his residence. It thus appears that entirely apart from transactions with the defendant including its records and the written change of address in Imbrey's own handwriting, defendant established from records of wholly disassociated persons and from the records of governmental agencies that Mr. Imbrey used the Flushing address on numerous occasions at or about the time in question.

Against this evidence the insured's sister and brother-in-law testified they lived at the Flushing address but Mr. Imbrey never lived there and never received mail there from the defendant, but they admitted receiving mail there addressed to Mr. Imbrey from the General Motors Acceptance Corporation. Nevertheless the August premium receipt mailed by defendant to Imbrey at that address was produced by plaintiff on the trial. There is really nothing in plaintiff's testimony to rebut the evidence adduced by defendant that Imbrey used the Flushing address in 1936 and received mail addressed to him at that address. On the whole case we think defendant clearly sustained the burden of proving that the Flushing address was for the purposes of the November, 1936, premium the last known post office address in this State to which premium notices should be sent.

Plaintiff does not expressly deny, but also does not admit, that the handwriting on the exhibit containing the change of address

is the handwriting of the insured. A comparison of this handwriting with other exhibits in evidence containing Mr. Imbrey's handwriting leaves no doubt that the change of address was made by Imbrey in his own handwriting. In addition defendant called as a witness Mr. Albert S. Osborne, the handwriting expert, who unequivocally gave his opinion that the handwriting on the exhibit in question was that of the insured. The evidence that the Flushing address was the last known address of the insured within the purview of section 92 was clear and convincing and we think the court should have directed a verdict on that issue in defendant's favor.

Respondent relies on the fact that on the face of the August premium notice which contains the change of address in Mr. Imbrey's handwriting the following appears: " If you want this address changed, write the new address on the other side of this card and sign your name," that this concededly was not done and plaintiff, therefore, contends there was no change or legal basis for a change of address, and relies on *Sbarbora* v. *Equitable Life Assurance Society* (N. Y. L. J. April 14, 1937, p. 1857; affd., 253 App. Div. 707).

In the *Sbarbora* case the insured applied for a loan and directed that the proceeds be mailed to him at a Sullivan place, Brooklyn, address. The loan application in that case contained a specific notation that the address given for the mailing of the loan proceeds was not a legal notice for change of address and that if a change of address for premium notice purposes was desired notice must be given in a separate communication. The court properly held that the address appearing on the loan application to which the proceeds of the loan were to be sent was not the mailing address of the insured for premium notices; that the company complied with section 92 by mailing the premium notice to the address given in the contract of insurance which was a Washington avenue address in Brooklyn; that after the insured had moved to the Sullivan place address he accepted moneys sent to the Washington avenue address and never notified the defendant that he wanted the address changed on their records for the purpose of sending premium notices; and that the evidence also established the actual receipt by the insured of the notice of premium due. Stating the place to send the proceeds of a loan was not under the facts disclosed in that case a proper designation of the address to which premium notices should be sent. The facts in the *Sbarbora* case clearly distinguish it from the case before us.

It was entirely competent for the insured to change the address for premium notices in the manner in which he did as indicated by the facts in this record.

Defendant's acts and efforts in connection with the insured's payment of the August and November premiums clearly indicate an effort to assist the insured in conserving the policy and not an effort to procure a forfeiture. Obviously defendant did not select the Flushing address without information from the insured. Its records were properly changed pursuant to the instruction given by the insured himself in his own handwriting and the verity of that address is established by the proof in the record including the corroborative proof from wholly disinterested and official sources. Defendant's testimony stands essentially uncontradicted and confirmed by documentary evidence which was not impeached.

The special verdict of the jury in answer to question No. 2 was contrary to the evidence and contrary to law and should have been set aside. It was error on the part of the trial court to refuse to direct a verdict in defendant's favor on that question and a general verdict in defendant's favor on the whole case. Where the evidence is clear and convincing and there is really no countervailing proof there is no real issue which requires submission to another jury and it is neither necessary nor proper to grant a new trial. (Civ. Prac. Act, § 584, subd. 1.) As was said in *Demarest* v. *Westchester Fire Ins. Co. of N. Y.* (234 App. Div. 556, 560; appeal dismissed, 259 N. Y. 627): "The defense having been clearly established, there is no occasion for a further trial which can only result in the same final determination."

The judgment in plaintiff's favor should be reversed, with costs, and judgment granted in favor of the defendant, with costs.

MARTIN, P. J., GLENNON, UNTERMYER and CALLAHAN, JJ., concur.

Judgment unanimously reversed, with costs, and judgment granted in favor of defendant, with costs.